

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/28/2012

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 11-37215 |
| JOHN HAROLD RAY, JR.; dba JADCO § | CHAPTER 7 |
| FINANCIAL SERVICES; dba § | |
| KLEINWOOD PLAZA, *et al* § | |
| § | |
| Debtor(s). § | JUDGE ISGUR |
| § | |
| § | |
| KENNETH E. JOEKEL, *et al* § | |
| § | |
| Plaintiff(s), § | |
| § | |
| vs. § | ADVERSARY NO. 12-3028 |
| § | |
| JOHN HAROLD RAY, JR., *et al* § | |
| § | |
| Defendant(s). § | |

## MEMORANDUM OPINION

Kenneth Joekel and Southern Employers Resources, Inc.'s ("SERI's")[1] § 727(a)(3) objection to John Ray's discharge is granted. Kenneth Joekel and SERI's § 727(a)(3) objection to Dorothy Ray's discharge is denied.

## Background

John Ray operated a loan-servicing and factoring business from 1963 until about February 23, 2011. (ECF No. 24 at 53-54). Through the year 2007, John Ray operated the business as a corporation named Jadco Financial Services, Inc. (ECF No. 24 at 16). From the

---

[1] Pacesetter Personnel Service is the trade name for a group of corporations owned by Kenneth Joekel. (ECF No. 24 at 66). At trial, the parties referred collectively to the group of entities owned by Kenneth Joekel as "Pacesetter." (ECF No. 24 at 66). The Court adopts this terminology for this Memorandum Opinion. Pacesetter was Jadco Financial Services, Inc.'s primary (and sometimes sole) client. SERI, one corporation of the Pacesetter group, loaned Jadco Financial Services $700,000.00 in a separate transaction in 1997. (Claim's Register 20-3).

beginning of 2008 until February 2011, John Ray operated the business as a sole proprietorship. (ECF No. 24 at 11-12).

John Ray collected a large amount of documents over the many decades of the business's operation. The business documents contained sensitive client information (e.g., social security numbers of their employees) as well as "typical" business records related to Jadco (such as balance sheets, bank records, and revenue and expense records). (ECF No. 24 at 11, 39). John Ray kept the business documents in the same location as the Rays' personal financial records. (ECF No. 24 at 11). In early 2011, these combined business and personal records filled approximately 300 banker's boxes.[2]

John Ray also kept business records on a computer hard drive. The records on the hard drive related solely to Jadco during the period it was operating as a corporation—that is, only through the end of 2007. (ECF No. 24 at 11-12). At no time did the computer contain the Rays' personal financial records. (ECF No. 24 at 29).

Early 2011 was a tumultuous period for the Rays. In February 2011, the long-standing relationship between Jadco (now operating as a sole proprietorship) and Pacesetter came to an end.[3] (ECF No. 24 at 42). As Pacesetter was Jadco's sole client, this effectively eliminated the Rays' income stream. (ECF No. 24 at 15, 41-42).

At the time, the Rays' assets were heavily concentrated in leveraged real estate. (ECF No. 24 at 111). With the loss of this significant income stream, the Rays were no longer able to

---

[2] John Ray gave the following approximate breakdown of the records contained in the banker's boxes: "Roughly 260 of those boxes contained client information belong to Pacesetter Personnel Service and its variety of entities. Maybe 10 of those boxes contained client information from some of my other clients in years gone by. The other 30 or so boxes contained my personal and Jadco tax returns from 1963 through 2007." (ECF No. 24 at 47).

[3] The Pacesetter companies were owned by Kenneth Joekel's father, with whom John Ray had a close relationship, until his death in February 2009. (ECF No. 24 at 42).

service the debt on the various properties. (ECF No. 24 at 111). Many of the properties were foreclosed. (ECF No. 24 at 111).

In early 2011, faced with a deteriorating financial situation, the Rays planned to sell their homestead in Spring, Texas and purchase a new, smaller home. The Rays purchased a new home by April 2011. (ECF No. 24 at 9). The Rays previous home had 8000 square feet with 3000 square feet of garage space; the new home has 2100 square feet with garage space of only 400 square feet. (ECF No. 24 at 38). In addition, a shopping center John Ray used to store the 300 banker's boxes was foreclosed. (ECF No. 24 at 38). Due to the downsizing and the loss of storage space, John Ray had to decide what to do with the documents.

On February 23, 2011, John Ray sent a letter to Ken Joekel (owner/president of Pacesetter) and requested instructions as to what should be done with Pacesetter's records. (ECF No. 24 at 68; Def. Ex. 1). John Ray received no reply of any kind. (ECF No. 24 at 76).

From March 2011 to May 2011, John Ray, with the help of his associate Jon L. Steele, destroyed all documents contained in the 300 banker's boxes. (ECF No. 24 at 9). John Ray's stated reason was that he now lacked the storage space and, due to the sensitive information contained within, the documents had to be destroyed. (ECF No. 24 at 41-43). John Ray admitted that he considered no other alternatives prior to destroying the documents. (ECF No. 24 at 35).

At first, John Ray burned the documents in a large drum at his homestead in Spring Texas. (ECF No. 24 at 10). After a "burn ban" went into effect, the remaining documents were shredded. (ECF No. 24 at 10). John Ray also destroyed the computer hard drive at around this time. (ECF No. 24 at 9).

In April 2011, during the destruction period, Kenneth Joekel sued John Ray in state court to recover sums due and owing under a promissory note. (ECF No. 1 at 4). It is undisputed that the destroyed documents were not material to the outcome of the state court lawsuit.[4] John Ray did not deny owing on the promissory note the full amount claimed in the lawsuit. (ECF No. 24 at 44). John Ray did not even hire counsel to represent him and essentially a default judgment was entered against him. (ECF No. 24 at 44-45).

At some point between May and June of 2011, the Rays began to contemplate hiring bankruptcy counsel. (ECF No. 24 at 9-10). The Rays formally hired bankruptcy counsel in June 2011. (ECF No. 24 at 10). The Rays filed for bankruptcy on August 25, 2011. (Case No. 11-37215; ECF No. 1).

Kenneth Joekel and SERI requested an extension to the deadline for objections. (Case No. 11-37215, ECF No. 26). This request was granted and the deadline was extended to January 20, 2012. (Case No. 11-37215, ECF No. 43). A 2004 examination of the Rays was held on December 19, 2011. (Case No. 11-37215, ECF No. 30). It was during this examination that John Ray acknowledged destroying the computer hard drive and the 300 banker's boxes of documents.

Kenneth Joekel and SERI filed this adversary proceeding on January 20, 2012.

## Analysis

The Bankruptcy Code provides that:

> The court shall grant the debtor a discharge, unless— . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .

---

[4] These documents may have been material to an attempt to collect upon the state court judgment, however.

11 U.S.C. § 727(a)(3).

**Destruction of Documents**

It is undisputed that John Ray destroyed a large amount of documents related to the Rays' and Jadco's[5] financial condition and business transactions.

**The Rays' and Jadco's Financial Condition and Business Transactions**

John Ray's own testimony indicates that, due to the destruction of the documents, the Rays' and Jadco's financial condition and business transactions cannot be fully reconstructed during the entire period relevant to this bankruptcy case. At trial, John Ray stated the following:

> When this adversary requested production of documents, they requested for four years from the time that I filed this bankruptcy petition, which was August 25, 2011. They wanted to see information back to September of 2007. I produced information from January of 2008, so for four months I didn't produce the information because I didn't have it any more. But that was information on the corporation and the time had lapsed for having to keep that information to support the tax returns that I had filed with the IRS. The three years had lapsed.

(ECF No. 24 at 40). Later John Ray stated: "The documents that were destroyed prior to 2008 is [sic] not relevant to showing my financial condition at the time that I filed for bankruptcy." (ECF No. 24 at 109).

John Ray is incorrect. He destroyed records relevant to this bankruptcy case. More specifically, he destroyed the records relating to September 2007 through December 2007.

---

[5] During the time period of September 2007 to December 2007, Jadco, as a corporation, was a separate legal entity from John Ray the individual. Notwithstanding this fact, a § 727(a)(3) action against an individual may "involve records of legally distinct business entities closely held by the debtor or intertwined with the debtor's financial affairs." *First Nat'l Bank v. Orr (In re Orr)*, 2011 Bankr. LEXIS 4618 (Bankr. D. Colo.) (citing *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896 (7th Cir. 2002); *Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 857 (Bankr. N.D. Tex. 2003), *aff'd* 108 Fed. Appx. 993 (5th Cir. 2004)); *see also* 6 *Collier on Bankruptcy* ¶ 727.03[3][e] (16th ed. 2011) ("All books and records that are material to a proper understanding of the debtor's financial condition and that are not merely personal books or records within the scope of this provision.").

The Bankruptcy Code allows for the avoidance of "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law . . . ." 11 U.S.C. § 544(b).  The Texas Uniform Fraudulent Transfer Act ("TUFTA") is one such law.  TEX. BUS. & COMM. CODE § 24.001 *et seq*.  Under TUFTA, fraudulent transfers may be avoided up to four years after the date of the transfer.  TEX. BUS. & COMM. CODE § 24.010(a)(1).

The Rays filed for bankruptcy on August 25, 2011.  (Case No. 11-37215; ECF No. 1).  The TUFTA four-year window encompasses September 2007 through December 2007—the time period for which records no longer exist.

The Court is not finding that John Ray (or Jadco) made fraudulent transfers or committed an act of fraud.  That is not the issue presently before the Court.  The issue is whether, despite the destruction of these documents, the Rays' and Jadco's financial conditions and business transactions may be reconstructed during the relevant period.

The records for September 2007 through December 2007 no longer exist. If potentially avoidable fraudulent transfers occurred between September 2007 and December 2007 (a relevant time-period given the four-year TUFTA window), John Ray destroyed the evidence.  Therefore, the Rays'[6] and Jadco's financial conditions or business transactions may not be fully reconstructed.

**Justification**

Despite the fact that relevant financial information may not be reconstructed due to the destruction of the records, John Ray would still be entitled to a discharge if the act of destruction "was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

---

[6] At one point during trial, John Ray alleged that he provided some personal bank account information from before January 1, 2008.  (ECF No. 24 at 38) ("But the bank statements that I provided on my personal bank account was [sic] further back than January 1 of 2008.").  This sole statement, without supporting documentation offered into evidence, is not sufficient.  Even if it were sufficient, of course, this would not resolve the issue as to Jadco.

The destruction was not justified under all of the circumstances.

John Ray was forced to decide what to do with 300 boxes of documents for which he no longer had adequate storage space, and which contained confidential information that he had a duty to safeguard. Without considering other options, John Ray decided to destroy the documents.

Whether or not the destruction of the documents related to Pacesetter (or other Jadco clients) was justified, the circumstances do not justify destruction of the banker's boxes containing the Rays' and Jadco's tax documents. Additionally, no valid justification has been provided for the destruction of the computer hard drive.

There was no third-party confidentiality issue as to the banker's boxes containing the Rays' and Jadco's tax documents. By John Ray's own estimate these documents comprised only around 30 of the 300 banker's boxes; there was no storage issue as to these records.

There also was no storage issue as to the computer hard drive. It is likely that merely storing the hard drive is all that would have been required for John Ray to meet his duty to keep the confidential information safe. If he were required to do more, a password would safeguard the confidential information from preying eyes—who would in any event only obtain possession of the computer after breaking into the Rays' home.

The fact that Kenneth Joekel did not respond to John Ray's letter does not make the destruction of all of the documents justified. John Ray's letter inquired as to what should be done with the paperwork relating to "Pacesetter's business affairs." (Def. Ex. 1). Even if the lack of a response from Joekel justifies destroying Pacesetter's records, it would not justify the destruction of those records related solely to Jadco or to the Rays. (ECF No. 24 at 14).

**Conclusion as to John Ray**

At first glance, this case presented extremely suspicious facts. John Ray burned and shredded 300 banker's boxes worth of documents a few months prior to filing bankruptcy and, at least in part, at the same time as he was being sued in state court on a promissory note. Nevertheless, this does not appear to be a case of intentional wrongdoing on the part of John Ray.

Instead, this case is an example of a misinformed assumption leading to disastrous consequences. John Ray assumed that he did not need to keep any records beyond the three years required to justify tax returns to the IRS. (ECF No. 24 at 50-51). Based on this assumption, and the desire to protect confidential client information, John Ray destroyed relevant financial and business records.

Section 727(a)(3) does not consider intent, but rather whether the actions were justified under the circumstances. *Union Planers Bank, N.A. v. Connors (In re Connors)*, 283 F.3d 896, 901 (7th Cir. 2002) ("[I]ntent to defraud is not a required element of a § 727(a)(3) violation."). John Ray has no valid justification for the destruction of the computer hard drive and those banker's boxes containing the Rays' and Jadco's tax returns. The Court must deny John Ray his discharge.

**Conclusion as to Dorothy Ray**

The Plaintiffs also request that Dorothy Ray be denied her discharge under § 727(a)(3). Although the Plaintiffs admit Dorothy Ray did not participate in the destruction of documents, they argue that she had an affirmative duty to prevent their destruction.

The cases cited in support by the Plaintiffs are materially distinguishable. Both involve post-eviction situations where debtors (or insiders) failed to prevent former landlords from destroying business records. *See Gebhardt v. Gartner (In re Gartner)*, 326 B.R. 357, 376-77 (Bankr. S.D. Tex. 2005); *In re Devine*, 11 B.R. 487, 488 (Bankr. D. Mass. 1981).

Although it involved failure to maintain adequate business records (as opposed to failure to stop the destruction of existing records), the case of *Cox v. Lansdowne (In re Cox)* is instructive. 904 F.2d 1299 (9th Cir. 1990). In *Cox v. Lansdowne*, the Ninth Circuit held that the debtor shared a duty with her spouse to maintain adequate business records because the debtor was "engaged in relatively extensive and complex business transactions" in connection with her husband's real estate business. 904 F.2d at 1402.

There is no evidence that Dorothy Ray participated in the operation of the loan-servicing and factoring business. Dorothy Ray had no duty to prevent the destruction of Jadco's business records.

It is a separate question, which need not be decided today, whether Dorothy Ray had a duty to prevent the destruction of the Rays' personal financial records. The question need not be decided because Dorothy Ray's failure to act is justifiable under the circumstances.

Even where a debtor has an independent duty to maintain records, reasonable reliance on a spouse to maintain such records may provide "justification" under § 727(a)(3). *Cox v. Lansdowne*, 904 F.2d at 1403 ("In any business relationship involving more than one person, the 'partners' will usually delegate responsibilities, including record keeping, among themselves. Such delegation is even more likely to occur in cases like this one where the 'partners' are married, and one spouse has significantly more business experience, knowledge and expertise than the other.").

The evidence shows that John Ray is a capable, honest, and shrewd businessman who successfully operated his own loan-servicing and factoring business for more than forty years. The evidence also shows that John Ray solely handled the couple's personal finances, and that he did so in a capable manner. Dorothy Ray was aware of both of these facts.

Regardless of any independent duty on her part to prevent the destruction of business or personal financial records, Dorothy Ray's reliance on her husband justifies any failure to act. It was entirely reasonable for Dorothy Ray to assume that her husband, who had diligently and competently maintained all necessary records for over forty years, would not be destroying documents relevant to an upcoming bankruptcy case (or, for example, an IRS audit). The fact that John Ray was incorrect does not affect this conclusion, because reasonableness is determined at the time of reliance.

At trial, the Court carefully considered the credibility of the witnesses on this issue. The overwhelming and highly credible evidence establishes that Dorothy Ray was justified in her reliance on her husband.

The Plaintiff's § 727(a)(3) cause of action against Dorothy Ray is denied because Dorothy Ray's failure to act was justified under the circumstances.

## Conclusion

The Court will issue a separate Judgment in accordance with this Memorandum Opinion.

SIGNED **August 28, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE